1  Jacob N. Whitehead (SBN 266123)
   *jacob@wemploymentlaw.com*
2  **W EMPLOYMENT LAW, APC**
   7700 Irvine Center Drive, Suite 800
3  Irvine, California 92618
   Telephone:  (949) 674-4922
4

5
   *Attorneys for Plaintiffs and Putative Class*
6

7

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  **April Shakoor-Delgado**, individually    **Case No.:** '24CV1811 MMABLM
    and on behalf of all others similarly
12  situated,
                                              **CLASS AND COLLECTIVE
13              Plaintiff,                     ACTION COMPLAINT**

14  v.

15  **Cornerstone First Mortgage, LLC**

16              Defendant.

17

18       Plaintiff, April Shakoor-Delgado ("Plaintiff"), individually and on behalf

19  of all other persons similarly situated, and as her Complaint against Defendant,

20  Cornerstone First Mortgage, LLC (hereafter "Defendant" or "Cornerstone") alleges as

21  follows:

22                    **PRELIMINARY STATEMENT**

23       1.    This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29

24  U.S.C. § 201, *et seq.,* Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.*,

25  Illinois Wage Payment and Collection Act ("IWPCA"), 820 115/1 *et seq.* and Fed. R.

26  Civ. P. 23 for Defendant's failure to pay Plaintiff and other similarly-situated employees

27  all earned minimum and overtime wages.

28

                                    1

2.      Plaintiff, the Collective Members and the Class Members are current and former employees of Cornerstone.  Plaintiff brings this action on behalf of herself and all similarly-situated current and former non-exempt employees who were not paid minimum wage and were not paid one-and-one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in any given workweek (also referred to as the "Covered Positions").

3.      The Collective Members are all current and former non-exempt employees who were not paid minimum wage and were not paid one-and-one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in any given workweek (also referred to as the "Covered Positions") at any time starting three years before this Complaint was filed, up to the present.

4.      The IMWL Class Members are all current and former non-exempt employees who were employed in Illinois and were not paid minimum wage and were not paid one-and-one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in any given workweek at any time starting three years before this Complaint was filed, up to the present.

5.      The IWPCA Class Members are all current and former non-exempt employees who were employed in Illinois and who worked for Cornerstone remotely at any time starting January 1, 2019, up to the present.

6.      Under the FLSA and IMWL, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their regular rate of pay for all time they spend working in excess of 40 hours in a given workweek. For the purposes of computing the lawful overtime rate, an employee's regular rate of pay must include all non-discretionary bonus payments. *See* 29 C.F.R. 778.208-215.

7.      Under the IWPCA, "[a]n employer shall reimburse an employee for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer." 820 ILCS 115/9.5(a). Cornerstone violated the IWPCA by failing to adequately reimburse Plaintiff

and the IWPCA Class Members for the equipment, internet, cell phone, and remote office expenses necessary to perform their job duties for Cornerstone.

8.      Plaintiff, the Collective Members and the IMWL Class Members were paid commissions in their work for Cornerstone. However, Cornerstone did not pay Plaintiff, the Collective Members and the IMWL Class Members earned at least minimum wage in all workweeks nor did Cornerstone pay any overtime whatsoever for the work that was performed which was in excess of forty (40) hours in any given workweek.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.* because this civil action arises under the laws of the United States.

10.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiff and the Collective Members occurred within the Northern District of Illinois.

11.      Plaintiff performed work and was employed by Cornerstone within this Judicial District.

12.      Cornerstone is a Delaware corporation with its principal place of business in San Diego, California.

13.      Plaintiff, the Collective Members and the Class Members in their work for Cornerstone were employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

## PARTIES

14.      At all times material to the matters alleged in this Complaint, Plaintiff was an individual residing in DuPage County, Illinois, and is an employee of Cornerstone.

15.      Plaintiff has been employed by Cornerstone as a loan officer from November 2021 through November 2023 and then again from February 2024 through the present.

16.     The IMWL Class Members, IWPCA Class Members and Collective Members are all current and former employees in the Covered Positions who worked for Cornerstone at any point in the three years preceding the filing of this Complaint.

17.     Under the IMWL, IWPCA and FLSA, Cornerstone is an employer.  At all relevant times, Cornerstone had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's, the Collective Members' and the Class Members' employment.  As a person who acted in the interest of Cornerstone in relation to the company's employees, Cornerstone is subject to liability under the IMWL, IWPCA and FLSA.

18.     At all material times, Plaintiff and the Class and Collective Members were employees of Cornerstone as defined by the IMWL, IWPCA and FLSA, 29 U.S.C. § 203(e)(1).

19.     At all material times, Plaintiff and the Class and Collective Members were non-exempt employees under 29 U.S.C. § 213(a)(1).

20.     Plaintiff has given her written consent to be named party Plaintiff in this action pursuant to 29 U.S.C. § 216(b) which is attached hereto as Exhibit A.

21.     At all relevant times, Plaintiff and the Class and Collective Members, in their work for Cornerstone, were engaged in commerce or the production of goods for commerce.

22.     At all relevant times, Plaintiff and the Class and Collective Members, in their work for Cornerstone were engaged in interstate commerce.

## FACTUAL ALLEGATIONS

23.     Cornerstone is a full-service mortgage lender.

24.     At all relevant times, Plaintiff, the Collective Members and the IMWL Class Members were paid on a commission basis.

25.    As a result, Cornerstone failed to ensure that Plaintiff and the Collective Members earned at least the full federal minimum wage for all hours worked in a given workweek.

26.    Cornerstone has likewise failed to ensure that Plaintiff and the IMWL Class Members earned at least the full Illinois minimum wage for all hours worked in a given workweek.

27.    For example, during the workweek beginning September 9, 2024 and ending September 15, 2024, Plaintiff worked no less than forty five (45) hours. However, Cornerstone failed to pay Plaintiff any compensation whatsoever for those hours worked.

28.    At all relevant times, Plaintiff, the Collective Members and the IMWL Class Members regularly worked in excess forty hours in a given workweek.

29.    For example, Plaintiff routinely averages at least forty-five (45) hours per week and it is common for Plaintiff to work sixty (60) hours in a week.

30.    However, Cornerstone failed to pay Plaintiff, the Collective Members and the IMWL Class Members any overtime whatsoever for their work which was in excess of forty hours in any given workweek.

31.    For example, during the workweek beginning September 9, 2024 and ending September 15, 2024, Plaintiff worked no less than forty five (45) hours. However, Cornerstone failed to pay Plaintiff an overtime for the hours that she worked which were in excess of forty (40) hours.

32.    The IMWL Class Members and the Collective Members were likewise paid on a commission basis.

33.    The IMWL Class Members and the Collective Members likewise worked in excess of forty (40) hours in a given workweek during the three-years prior to the filing of this lawsuit.

34.    The IMWL Class Members and the Collective Members likewise were not paid any overtime whatsoever for their work which was in excess of forty hours in any given workweek.

35.    Plaintiff, the IMWL Class Members and the Collective Members were non-exempt employees.

36.    Plaintiff, the IMWL Class Members and Collective Members were not managers. They did not have supervisory authority over any employees, did not possess the authority to hire or fire employees, did not possess authority to make critical job decisions with respect to any of Cornerstone's employees, did not direct the work of two or more employees, and did not exercise discretion and independent judgment with respect to matters of significance.

37.    The primary duty of Plaintiff, the IMWL Class Members and Collective Members was not the management of the enterprise in which they were employed or any recognized department of the enterprise.

38.    At all relevant times, Plaintiff and the IWPCA Class Members work to meet the day-to-day customer service needs of Cornerstone.

39.    In other words, without Plaintiff and the IWPCA Class Members, Cornerstone would have little to no customer service and Cornerstone would not be able to operate as a profitable business.

40.    At all relevant times, Cornerstone has imposed strict high-speed internet, dedicated phone, and dedicated home office space requirements upon Plaintiff and the IWPCA Class Members.

41.    At all relevant times, Cornerstone has failed to reimburse Plaintiff and the IWPCA Class Members for the costs of such high-speed internet, phone, and dedicated home office expenses.

42.    At all relevant times, the high-speed internet required by Cornerstone was for Cornerstone's benefit.

43.    At all relevant times, Plaintiff and the IWPCA Class Members were required to work on Cornerstone's software platform, which requires employees to be connected to the internet via a high-speed connection.

44.    In other words, Plaintiff and the IWPCA Class Members could not fulfill their job duties for Cornerstone without a high-speed connection.

45.    At all relevant times, the Plaintiff and the IWPCA Class Members were required by Cornerstone to have a phone in order to communicate with Cornerstone customers and employees. This was for Cornerstone's benefit.

46.    In other words, Plaintiff and the IWPCA Class Members could not fulfill their job duties for Cornerstone without a high-speed internet connection and phone.

47.    At all relevant times, Plaintiff had to provide a business-grade highspeed internet line which cost her approximately $200 per month. At all relevant times, this expense was not eligible for reimbursement by Cornerstone.

48.    At all relevant times, Plaintiff had to provide an unlimited data cell phone plan which cost her approximately $84.00 per month. At all relevant times, this expense was not eligible for reimbursement by Cornerstone.

49.    At all relevant times, Cornerstone required Plaintiff and the IWPCA Class Members to provide and maintain a quiet, dedicated, clutter-free remote work space.

50.    Cornerstone's home office requirements are designed to ensure that its brand standards are met and that Cornerstone presents itself to its customers in a professional and positive light.

51.    Rather than providing and maintaining appropriate office space for Plaintiff and the IWPCA Class Members, Cornerstone passed the expense of providing the same to Plaintiff and the IWPCA Class Members without reimbursing them for any of the expenses for providing and maintaining the same.

52.    Plaintiff and the IWPCA Class Members have been responsible for equipment and monthly expenses associated with maintaining a functional and appropriate remote office.

53.     For example, Plaintiff was required to purchase a printer, toner, paper and other office supplies in order to perform her job for Cornerstone.

54.     At all relevant tines, Cornerstone was aware that Plaintiff and the IWPCA Class Members were paying for the necessary expenditures detailed herein.

55.     At all relevant times, Cornerstone had no expense reimbursement policy which permitted Plaintiff and the IWPCA Class Members to request that these necessary expenditures be reimbursed by Cornerstone.

56.     In fact, at all relevant times, it was Cornerstone's policy that the necessary expenditures detailed herein were not eligible for reimbursement.

## COLLECTIVE ACTION ALLEGATIONS

57.     Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

58.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) on her own behalf and as a representative of individuals similarly situated who are current or former employees of Cornerstone in the Covered Positions.

59.     Cornerstone subjected all of their employees within the Covered Positions, including Plaintiff and the Collective Members, to their policy and practice of not paying them one and one-half times their regular rates of pay for all time they spent working in excess of 40 hours in a given workweek, in violation of 29 U.S.C. § 207(a).

60.     At all times material, Plaintiff and the Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Cornerstone's decision, policy, plan, and common programs, practices, procedures, protocols, routines, and rules of willfully subjecting Plaintiff and the Collective Members to their policy and practice of not paying the employees within the Covered Positions one and one-half times their regular rates of pay for time they spent working in excess of 40 hours in a given workweek.

61.     Plaintiff's claims stated in this complaint are essentially the same as those of the Collective Members. This action is properly maintained as a collective action

because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiff is identical or substantially similar.

62.    The Collective Members perform or have performed the same or similar work as Plaintiff.

63.    Cornerstone's failure to pay overtime compensation required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of Plaintiff or the Collective Members.

64.    Although the exact amount of damages may vary among the Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The claims of all Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Cornerstone that caused harm to all of the Collective Members.

65.    As such, Plaintiff bring his FLSA overtime claim as a collective action on behalf of the following class:

> **All current and former loan officers of Cornerstone who were paid on a commission basis at any time starting three years before this Complaint was filed, up to the present.**

66.    Cornerstone's unlawful conduct, as described herein, is pursuant to its corporate policy or practice of minimizing labor costs by refusing and/or failing to properly compensate its employees according to the FLSA.

67.    Cornerstone was aware or should have been aware that federal law prohibited them from failing to pay Plaintiff and the Collective Members minimum wage and one and one-half times their regular rates of pay for time they spent working in excess of 40 hours in a given workweek.

68.    Cornerstone's unlawful conduct has been widespread, repeated, and consistent.

69.    This action is properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

70.     Upon information and belief, the individuals similarly situated to Plaintiff include hundreds, and possibly thousands, of current and former Cornerstone employees. Plaintiff is unable to state the precise number of similarly-situated employees because that information is solely in Cornerstone's possession, custody, or control, but it can be readily ascertained from their employment records.

71.     Notice can be provided to the Collective Members by First Class Mail to the last address known to Cornerstone, via email at the last known email address known to Cornerstone, by text message to the last known telephone number known to Cornerstone and by workplace posting at each of Cornerstone's facilities.

## **RULE 23 CLASS DEFINITIONS AND ALLEATIONS**

72.      Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

73.     Plaintiff brings Claims for Relief for violation of the IMWL as a class action pursuant to Rule 23(a), (b)(2), and (b)(3). Plaintiff brings these claims on behalf of himself and all members of the following Class Members:

> The **IMWL Class Members** are current and former loan officers of Cornerstone who worked in Illinois and were paid on a commission basis at any time starting three years before this Complaint was filed, up to the present.

> The **IWPCA Class Members** are current and former non-exempt employees of Cornerstone who worked remotely in Illinois at any time from January 1, 2019 up to the present.

> **Numerosity (Rule 23(a)(1)).**

74.     The Classes are so numerous that joinder of all members is impracticable. Plaintiff on information and belief alleges, that Cornerstone employed greater than one hundred people who satisfy the definition of the IMWL and IWPCA Class.

### a. Existence of Common Questions of Law and Fact (Rule 23(a)(2)).

75.    Common questions of law and fact exist as to the Plaintiffs and the members of the IMWL and IWPCA Class including, but not limited to, the following:

    a. Whether Cornerstone unlawfully failed to pay members of the IMWL Class the minimum wage and overtime wage, in violation of the Illinois Minimum Wage Law;

    b. Whether Cornerstone failed to adequately reimburse the IWPCA Class Members for the costs of performing their job duties remotely in their work for Cornerstone;

    c. Whether Cornerstone unlawfully failed to keep and maintain accurate and true records of the hours worked by members of the Illinois class as required by applicable law; and

    d. The damages sustained and the proper measure of restitution recoverable by members of the IMWL and IWPCA Classes.

### b. Typicality (Rule 23(a)(3)).

76.    Plaintiff's claims are typical of the members of the IMWL and IWPCA Class Members' claims. Plaintiff, like other members of the IMWL and IWPCA Classes, was subjected to Cornerstone's illegal scheme to maximize profits by depriving their employees of overtime compensation and making adequate expense reimbursements.

### c. Adequacy (Rule 23(a)(4)).

77.    Plaintiff will fairly and adequately represent and protect the interests of the members of the IMWL and IWPCA Classes. Plaintiff has retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.

### d. Injunctive and Declaratory Relief (Rule 23(b)(2)).

78.    Class certification of the Rule 23 claims is appropriate pursuant to Rule

23(b)(2) because Cornerstone acted or refused to act on grounds generally applicable to the members of the IMWL Class, making appropriate declaratory relief with respect to the members of the IMWL and IWPCA Classes as a whole.

**e. Predominance and Superiority of Class Action (Rule 23(b)(3)).**

79.    Class certification of the Rule 23 claims is also appropriate under Rule 23(b)(3) because questions of law and fact common to members of the IMWL and IWPCA Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Cornerstone's common and uniform policies and practices illegally deprived Plaintiff and all similarly situated employees of wages; thus, making the question of liability and damages much more manageable and efficient to resolve in a class action, compared to hundreds of individual trials. The damages suffered by individual members of the IMWL and IWPCA Classes are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Cornerstone's practices.

80.    Plaintiff intends to send notice to all members of the IMWL and IWPCA Class Members to the extent required by Rule 23.

## <u>COUNT ONE: FAIR LABOR STANDARDS ACT</u>
## <u>UNPAID MINIMUM WAGE & OVERTIME</u>

81.    Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

82.    Under the FLSA, employers must pay all non-exempt employees an overtime wage premium of pay one and one-half times their regular rate of pay for all time they spend working in excess of 40 hours in a given workweek. For the purposes of computing the lawful overtime rate, an employee's regular rate of pay must include all non-discretionary bonus payments. *See* 29 C.F.R. 778.208-215.

83.    At all relevant times, Plaintiff and the Collective Members were compensated on a commission basis and Cornerstone failed to ensure that they were paid at least the minimum wage.

84.    For example, during the workweek beginning September 9, 2024 and ending September 15, 2024, Plaintiff worked no less than forty five (45) hours. However, Cornerstone failed to pay Plaintiff any compensation whatsoever for those hours worked.

85.    At all relevant times, Plaintiff and the Collective Members regularly worked in excess of forty hours in a given workweek and Cornerstone failed to pay them any overtime whatsoever.

86.    For example, Plaintiff routinely averages at least forty-five (45) hours per week and it is common for Plaintiff to work sixty (60) hours in a week.

87.    For further example, during the workweek beginning September 9, 2024 and ending September 15, 2024, Plaintiff worked no less than forty five (45) hours. However, Cornerstone failed to pay Plaintiff an overtime for the hours that she worked which were in excess of forty (40) hours. Plaintiff was not paid any overtime whatsoever for the hours which she worked that were in excess of forty hours.

88.    The Collective Members were likewise paid on a commission basis.

89.    The Collective Members likewise worked in excess of forty (40) hours in a given workweek during the three-years prior to the filing of this lawsuit.

90.    The Collective Members likewise were not paid any overtime whatsoever for their work which was in excess of forty hours in any given workweek.

91.    The FLSA further provides that wages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." 29 C.F.R. § 531.35. The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in

other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

92.    Cornerstone further violated the minimum wage and overtime provisions of the FLSA by requiring Plaintiff and the Collective Members to "kick-back" the costs of high-speed internet, phone and other home office expenses as further detailed herein.

93.    As a result, Cornerstone has intentionally failed and/or refused to pay Plaintiff and the Collective Members overtime according to the provisions of the FLSA, 29 U.S.C. § 207.

94.    Although at this stage, Plaintiff and the Collective Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the Collective Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

95.    Cornerstone knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiff and the Collective Members over the course of their employment would violate the FLSA, and Cornerstone was aware of the FLSA's minimum wage overtime requirements. As such, Cornerstone's conduct constitutes a willful violation of the FLSA.

96.    As a result of Cornerstone's failure or refusal to pay Plaintiff and the Collective Members minimum wage and overtime as detailed herein, Cornerstone violated 29 U.S.C. §§ 206 and 207(a). Plaintiff and the Collective Members are therefore entitled to compensation all unpaid minimum and overtime wages, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

## COUNT TWO: ILLINOIS MINIMUM WAGE LAW
## UNPAID MINIMUM WAGE & OVERTIME

97.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

98.    The Illinois Administrative Code provides that the Director of the Illinois Department of Labor, in interpreting the IMWL and regulations thereunder, may look to the United States Department of Labor's regulations and interpretations of the FLSA. *See* Ill. Admin. Code tit. 56, pt. 210.120 (2012). But the Code also provides that where there are concurrent state and federal powers, the stricter of the two shall prevail. *See* Ill. Admin. Code tit. 56, pt. 210.100 (2012). Thus, if there is a difference in the interpretation of the IMWL and FLSA, the IMWL is more favorable to the employee. *See Driver,* 890 F. Supp 2d at 1011.

99.    At all relevant times, Plaintiff and the IMWL Class Members were compensated on a commission basis. However, Cornerstone failed to ensure that Plaintiff and the IMWL Class Members earned at least the Illinois minimum wage in each and every workweek

100.    At all relevant times, Plaintiff and the IMWL Class Members regularly worked in excess forty hours in any given workweek. However, Cornerstone failed to pay Plaintiff and the IMWL Class Members any overtime whatsoever for the hours that they worked which were in excess of forty (40) hours in a given week.

101.    At all relevant times, Cornerstone further violated the IMWL by requiring Plaintiff and the IMWL Class Members to "kick-back" the costs of high-speed internet, phone and other home office expenses as further detailed herein.

102.    Cornerstone has engaged in a widespread pattern and practice of violating the provisions of the IMWL by failing and/or refusing to pay Plaintiff and the IMWL Class Members in accordance with the IMWL.

103.    Cornerstone has willfully failed and/or refused to pay Plaintiff and the IMWL Class Members overtime according to the provisions of the IMWL.

104.   Although at this stage, Plaintiff and the IMWL Class Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the IMWL Class Members believe that such information will become available during the course of discovery.  Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

105.   Cornerstone knew that – or acted with reckless disregard as to whether – their refusal or failure to properly compensate Plaintiff and the IMWL Class Members over the course of their working from home would violate Illinois law, and Cornerstone was aware of the Illinois minimum wage and overtime wage requirements during Plaintiff's and the IMWL Class Members' employment.   As such, Cornerstone's conduct constitutes a willful violation of the IMWL.

106.   Cornerstone has and continues to willfully violate the IMWL by not paying Plaintiff and the IMWL Class Members all minimum and overtime wages as detailed herein.

107.   As a result of Cornerstone's failure or refusal to pay Plaintiff and the IMWL Class Members minimum wage and overtime as detailed herein, Cornerstone violated IMWL 820 § 105/4(a).  Plaintiff and the IMWL Class Members are therefore entitled to all unpaid minimum wages and overtime wages, to be proven at trial, plus statutory damages and interest, reasonable attorney's fees, and costs.

## COUNT THREE: ILLINOIS WAGE PAYMENT AND COLLECT ACT UNLAWFUL EXPENSE REIMBURSEMENTS

108.   Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

109.   Under the IWPCA, "[a]n employer shall reimburse an employee for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer." 820 ILCS 115/9.5(a). Cornerstone violated the IWPCA by failing to adequately reimburse

Plaintiff and the IWPCA Class Members for the equipment, internet, cell phone, and remote office expenses necessary to perform their job duties for Cornerstone.

110.    Plaintiff and the IWPCA Class Members work in a "remote" work-from-home environment.

111.    At all relevant times, Plaintiff and the IWPCA Class Members work to meet the day-to-day customer service needs of Cornerstone.

112.    In other words, without Plaintiff and the IWPCA Class Members, Cornerstone would have little to no customer service and Cornerstone would not be able to operate as a profitable business.

113.    At all relevant times, Cornerstone has imposed strict high-speed internet, dedicated phone, and dedicated home office space requirements upon Plaintiff and the IWPCA Class Members.

114.    At all relevant times, Cornerstone has failed to reimburse Plaintiff and the IWPCA Class Members for the costs of such high-speed internet, phone, and dedicated home office expenses.

115.    At all relevant times, the high-speed internet required by Cornerstone was for Cornerstone's benefit.

116.    At all relevant times, Plaintiff and the IWPCA Class Members were required to work on Cornerstone's software platform, which requires employees to be connected to the internet via a high-speed connection.

117.    In other words, Plaintiff and the IWPCA Class Members could not fulfill their job duties for Cornerstone without a high-speed connection.

118.    At all relevant times, the Plaintiff and the IWPCA Class Members were required by Cornerstone to have a phone in order to communicate with Cornerstone customers and employees. This was for Cornerstone's benefit.

119.    In other words, Plaintiff and the IWPCA Class Members could not fulfill their job duties for Cornerstone without a high-speed internet connection and phone.

120.    At all relevant times, Plaintiff had to provide a business-grade highspeed internet line which cost her approximately $200 per month. At all relevant times, this expense was not eligible for reimbursement by Cornerstone.

121.    At all relevant times, Plaintiff had to provide an unlimited data cell phone plan which cost her approximately $84.00 per month. At all relevant times, this expense was not eligible for reimbursement by Cornerstone.

122.    At all relevant times, Cornerstone required Plaintiff and the IWPCA Class Members to provide and maintain a quiet, dedicated, clutter-free remote work space.

123.    Cornerstone's home office requirements are designed to ensure that its brand standards are met and that Cornerstone presents itself to its customers in a professional and positive light.

124.    Rather than providing and maintaining appropriate office space for Plaintiff and the IWPCA Class Members, Cornerstone passed the expense of providing the same to Plaintiff and the IWPCA Class Members without reimbursing them for any of the expenses for providing and maintaining the same.

125.    Plaintiff and the IWPCA Class Members have been responsible for equipment and monthly expenses associated with maintaining a functional and appropriate remote office.

126.    For example, Plaintiff was required to purchase a printer, toner, paper and other office supplies in order to perform her job for Cornerstone.

127.    At all relevant tines, Cornerstone was aware that Plaintiff and the IWPCA Class Members were paying for the necessary expenditures detailed herein.

128.    At all relevant times, Cornerstone had no expense reimbursement policy which permit Plaintiff and the IWPCA Class Members to request that these necessary expenditures be reimbursed by Cornerstone.

129.    In fact, at all relevant times, it was Cornerstone's policy that the necessary expenditures detailed herein were not eligible for reimbursement.

130.   As a result, Cornerstone has intentionally failed and/or refused to pay Plaintiff and the IWPCA Class Members according to the provisions of the IWPCA.

131.   Cornerstone has willfully failed and/or refused to pay Plaintiff and the IWPCA Class Members according to the provisions of the IWPCA.

132.   Although at this stage, Plaintiff and the IWPCA Class Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the IWPCA Class Members believe that such information will become available during the course of discovery.

133.   As a result of Cornerstone's failure or refusal to adequately reimburse Plaintiff and the Class Members for the internet, cell phone and equipment expenses necessary to perform their job duties for Cornerstone, Cornerstone violated 820 ILCS 115/9.5(a).  Plaintiff and the IWPCA Class Members are therefore entitled to payment of all unreimbursed expenses, plus statutory damages and interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, April Shakoor-Delgado individually, and on behalf of all other similarly situated persons, requests that this Court grant the following relief in Plaintiff's, the Collective Members', the IMWL Class Members' and the IWPCA Class Members' favor, and against Defendant, Cornerstone First Mortgage, LLC:

A.   For the Court to declare and find that the Cornerstone committed one or more of the following acts:

   i.   violated the minimum wage and overtime provisions of the FLSA;

   ii.   willfully violated the minimum wage overtime provisions of the FLSA;

   iii.   violated the minimum wage and overtime provisions of IMWL;

   iv.   willfully violated the minimum wage and overtime provisions of the IMWL;

   v.   violated the expense reimbursement provisions of the IWPCA; and

vi.    willfully violated the expense reimbursement provisions of the IWPCA.

B.    For the Court to award damages in the amounts of all unpaid minimum and overtime wages and expenses due and owing to Plaintiff, the Collective Members and the Class Members;

C.    For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b), in amounts to be determined at trial;

D.    For the Court to award prejudgment and post-judgment interest on any damages awarded;

E.    For the Court to award all statutory damages, interest, attorney fees and costs owed to Plaintiff and the IMWL Class Members under the IMWL.

F.    For the Court to award all statutory damages, interest, attorney fees and costs owed to Plaintiff and the IWPCA Class Members under the IWPCA.

G.    For the Court to award Plaintiff's and the Collective Members' reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b) and all other causes of action set forth in this Complaint.

H.    For the Court to provide a reasonable incentive award for Plaintiff to compensate her for the time she spent attempting to recover wages for the Collective Members and Class Members and for the risks she took in doing so; and

I.    Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, the FLSA Collective, and the Illinois Class Members hereby demand a jury trial on all causes of action and claims with respect to which they each have a state and/or federal constitutional right to a jury trial.

DATED:  October 8, 2024.

Respectfully submitted,

1                             **W EMPLOYMENT LAW, APC**

2

3                             _____

                            Jacob N. Whitehead, Esq.

4                             Attorney for Plaintiff

5                             **April Shakoor-Delgado**, and the putative class

6

7                             s/ *Michael L. Fradin*

8                             Michael L. Fradin, Esq. (*pro hac vice* forthcoming)

9                             8401 Crawford Ave. Ste. 104

                            Skokie, IL 60076

10                           Telephone: 847-986-5889

11                           Facsimile: 847-673-1228

                          Email: mike@fradinlaw.com

12

13                          By: /s/ *James L. Simon*

                         James L. Simon (*pro hac vice* forthcoming)

14                          SIMON LAW CO.

                         11 ½ N. Franklin Street

15                          Chagrin Falls, Ohio 44022

                         Telephone: (216) 816-8696

16                          Email: james@simonsayspay.com

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **April Shakoor-Delgado**, | Case No. |
| Plaintiff, | |
| v. | **APRIL SHAKOOR-DELGADO'S WRITTEN CONSENT TO BE PARTY PLAINTIFF PURSUANT TO 29 U.S.C. § 216(b)** |
| **Cornerstone First Mortgage, LLC**. | |
| Defendant. | |

I, April Shakoor-Delgado, do hereby consent to be a party plaintiff to the above-entitled action pursuant to 29 U.S.C. § 216(b). I authorize my attorneys, W Employment Law, APC; Simon Law Co.; Fradin Law, LLC, and their associated attorneys ("the Attorneys"), to to represent me in the Lawsuit and make decisions on my behalf, including how to conduct the Lawsuit, settlement, and all other matters related to the Lawsuit.

_April Shakoor-Delgado (Oct 1, 2024 12:53 CDT)_

_____
April Shakoor-Delgado

10/01/24
_____
Date

# CORNERSTONE; CONSENT FORM; 10-1-24

Final Audit Report                                                           2024-10-01

| | |
|---|---|
| Created: | 2024-10-01 |
| By: | James Simon (james@simonsayspay.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAt1w6pXm3fJ9794uzrExjMAdgLg3Fd5UV |

## "CORNERSTONE; CONSENT FORM; 10-1-24" History

Document created by James Simon (james@simonsayspay.com)
2024-10-01 - 5:49:58 PM GMT

Document emailed to April Shakoor-Delgado (aprilguzman319@gmail.com) for signature
2024-10-01 - 5:50:01 PM GMT

Email viewed by April Shakoor-Delgado (aprilguzman319@gmail.com)
2024-10-01 - 5:52:46 PM GMT

Document e-signed by April Shakoor-Delgado (aprilguzman319@gmail.com)
Signature Date: 2024-10-01 - 5:53:47 PM GMT - Time Source: server

Agreement completed.
2024-10-01 - 5:53:47 PM GMT

Adobe Acrobat Sign