UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL SHAKOOR-DELGADO, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>CORNERSTONE FIRST MORTGAGE, LLC,<br><br>Defendant. | Case No.: 24-CV-1811 TWR (BLM)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL CLASS CERTIFICATION**<br><br>(ECF No. 24) |

Presently before the Court is Plaintiff April Shakoor-Delgado's Motion for Conditional Certification ("Mot.," ECF No. 24), Defendant Cornerstone First Mortgage, LLC's Response in Opposition to ("Opp'n," ECF No. 26), and Plaintiff's Reply in Support of ("Reply," ECF No. 27) the Motion. The Court held a hearing and took the Motion under submission on Thursday, September 25, 2025. (*See* ECF No. 33.) The Court **GRANTS** the Motion and **CONDITIONALLY CERTIFIES** the proposed class for the following reasons.

## BACKGROUND

### I. Factual Background

Plaintiff was employed by Defendant as a Loan Officer from approximately December 10, 2021, until November 6, 2023, and then again from February 9, 2024, until

at least July 3, 2025. (*See* Mot. at 4.) At all relevant times, Plaintiff was a full-time employee of Defendant working in Illinois. (*See id.*) As employees of Defendant, Plaintiff and her fellow Loan Officers were required to sign a common Employment Agreement with Defendant. (*See id.*) Defendant currently employs approximately 500 Loan Officers across the country. (*See* ECF No. 26-2 ("Cahan Decl.") ¶ 2.) Of those 500 Loan Officers, approximately 350 are employed as full-time employees, and "all are employed on a commission-only basis[.]" (*Id.* ¶ 3.)

Per the Employment Agreement, Defendant's Loan Officers are paid on a commission-only basis, and their job duties generally include all services necessary to originate, obtain, process, close loans, and complete all related incidental tasks. (*See id.*) Specifically, Loan Officers are "only considered to have earned and be entitled to payment of commission on loans once they have been sold on the secondary market and the period for any early payment defaulted ("EPD") or early payoff ("EPO") has expired." (ECF No. 24-1 ("Whitehead Decl.") at 17.) Additionally, in the event "a commission is advanced but is later deemed un-earnable as a result of any [EPD] or [EPO], the amounts advanced will be subtracted from [the e]mployee's net commission in calculating any unearned commission not yet paid to [e]mployee." (*Id.*) Plaintiff alleges that as a result of Defendant's compensation policies, Plaintiff was paid $0.00 during the pay period beginning December 17, 2023 and ending December 24, 2023, despite working more than 40 hours that week. (*See* Mot. at 5; Whitehead Decl. at 31.) Plaintiff also alleges that she and her fellow Loan Officers "are never paid any overtime whatsoever." (Mot. at 5.)

Plaintiff alleges that Defendant does not provide office space for its Loan Officers to work from, and that it is not possible for Loan Officers to perform their jobs without a highspeed internet connection, phone line, constant access to email, and software platforms such as Encompass, Blend, Zendesk, and Microsoft Teams. (*See id.* at 6.) Under Defendant's policies, employee expenses are only eligible for reimbursement if they are "expressly authorized in writing by [Defendant] before [the e]mployee incurs any such expense." (Whitehead Decl. at 20.) As such, the internet, phone, and home office expenses

incurred by Plaintiff and her fellow Loan Officers are not expressly pre-authorized and are therefore not eligible for reimbursement. (*See* Mot. at 6.) Plaintiff expressly asked her direct supervisor whether the phone and internet expenses that she incurred were eligible for reimbursement, and she was informed that they were not. (Whitehead Decl. at 13.)

In its Opposition, Defendant alleges that Plaintiff's employment was unique. (*See* Opp'n at 2, 6). First, Plaintiff, while working as a Loan Officer for Defendant, "was also self-employed through her own business, 'Skyline Financial Mortgage,' which originated 'fix and flip' loans for investors looking to 'buy property, fix it up, and sell it.'" (*See* Opp'n at 2; *see also* ECF No. 26-1 ("Vivoli Decl.") at 14:5–25.) Through this self-employment, Plaintiff wrote off as tax deductions "the very 'expenses' she sues to recover in this case," which Defendant asserts to be a double-recovery. (Opp'n at 2.)

Second, Defendant highlights the unique circumstances that led to Plaintiff's employment as a Loan Officer. (*See id.* at 3.) Plaintiff was employed by Defendant on two separate occasions. (*See id.* at 4.) Defendant rehired Plaintiff in 2024 because Plaintiff explained that she "loved Cornerstone" and wanted full-time employment primarily to receive health insurance benefits. (*See id.*; *see* Cahan Decl. ¶ 4.) As such, Defendant characterizes Plaintiff's employment as an "exception": "Plaintiff is the only full-time employee of [Defendant] employed on a commission-only basis that [Defendant] has even perceived could, potentially, fall short of earning a minimum wage, and Plaintiff accepted that employment knowing it was an exception to [Defendant]'s otherwise established company policy." (Opp'n at 3; *see* Cahan Decl. ¶ 3.) "As a result of Plaintiff's lawsuit—over the one and only time [Defendant] employed a [L]oan [O]fficer on a full time basis knowing there was a chance the [L]oan [O]fficer would not earn at least minimum wage—[Defendant] has implemented a no-exceptions policy against employing [L]oan [O]fficers on a commission-only basis if there is any chance the [L]oan [O]fficer will not earn far in excess of minimum wage in the form of commission-only revenue." (*Id.* ¶ 7.)

Lastly, Defendant introduces that Plaintiff has initiated and subsequently settled two lawsuits filed against other mortgage companies by which she was formerly employed.

(Opp'n at 4.) "At her deposition, Plaintiff refused to disclose the terms of her settlements against the two prior employers with whom she settled; claiming they were 'confidential.'" (*Id.* (quoting Vivoli Decl. at 41:3–21).) From these facts, Defendant asserts that Plaintiff has cultivated a "unique cottage industry of shaking down her former employers[.]" (Opp'n at 3.)

## II.     Procedural Background

On October 9, 2024, Plaintiff filed her Complaint, alleging that Defendant violated the Fair Labor Standards Act ("FLSA") by (1) failing to pay at least minimum wage in all weeks worked, (2) failing to pay overtime for hours worked in excess of forty hours in any given workweek, and (3) failing to pay all wages free and clear. (*See* ECF No. 1 ("Compl.") ¶¶ 82–93.) Defendant filed its Answer on February 10, 2025. (ECF No. 10.) On July 3, 2025, Plaintiff filed the instant Motion. (ECF No. 24.) On August 7, 2025, Defendant filed its Opposition, (ECF No. 26), and on August 28, 2025, Plaintiff filed her Reply, (ECF No. 27).

## LEGAL STANDARD

An employee may bring an FLSA collective action on behalf of themselves and other employees who are "similarly situated" and who have filed written consent to join the action. 29 U.S.C. § 216(b); *see Valladon v. City of Oakland*, No. C 06-07478 SI, 2009 WL 2591346 at *7 (N.D. Cal. Aug. 21, 2009). The Ninth Circuit's seminal decision in *Campbell v. City of Los Angeles*, defined the term "similarly situated" as "whether the named plaintiff and putative plaintiffs are 'alike with regard to some material aspect of their litigation.'" 903 F.3d 1090, 1114 (9th Cir. 2018). "What matters is not just any similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution." *Id.* at 1115. This level of similarity is appropriate for conditional certification because it allows plaintiffs to vindicate rights by pooling resources. *Id.* at 1114. In sum, if the named plaintiff makes a plausible showing that they share with the putative plaintiffs a similar issue of law or fact material to the disposition of

their FLSA claim, the district court should grant conditional certification. *See Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-CV-04456-PJH, 2018 WL 6727825, at *6 (N.D. Cal. Dec. 21, 2018); *see also Campbell*, 903 F.3d at 1109–10, 1117.

If conditional certification is granted, the "sole consequence" is the "sending of court-approved written notice to workers who may wish to join the litigation as individuals." *Id.* at 1101. District courts have discretionary authority to monitor the preparation and distribution of the notice to ensure that it is "timely, accurate, and informative." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

## ANALYSIS

### I. Conditional Certification

Plaintiff argues she is similarly situated to the proposed Collective Members because they all had the same general job duties and were all paid according to Defendant's compensation policy on a commission-only basis. (*See* Mot. at 11.) They were all subject to the same commission "claw-back" provision, which provided that, in the event a "commission is advanced but is later deemed un-earnable as a result of any early payment default or early payoff of the loan, the amounts advanced will be subtracted from Employee's net commission in calculating any unearned commission not yet paid to Employee." (*Id.* (quoting Whitehead Decl. at 17).) None were eligible for overtime compensation, even if they worked more than 40 hours in a work week. (*See* Mot. at 12.) They all suffered from Defendant's failure to reimburse phone, internet, and home office expenses, even upon Plaintiff's specific request, thus creating a potential "kick-back" and preventing earned wages from being paid "free and clear," as required by the FLSA. (*Id.* at 14.) In sum, Plaintiff argues that she and the proposed Collective Members were all subject to the same terms of employment.

In his Declaration, Mr. Cahan states that, of Defendant's 500 Loan Officers, 350 are employed as full-time employees "on a commission-only basis[.]" (Cahan Decl. ¶ 2.) There is no dispute that the actual terms of employment were the same for Plaintiff and the proposed Collective Members. (ECF No. 33.) Therefore, Plaintiff has plausibly alleged

that she and the proposed Collective Members were employed under the same compensation structure and thus were similarly situated.

In its Opposition, Defendant argues that Plaintiff has not carried her burden of demonstrating that she is similarly situated to the proposed Collective Members because she has provided only a "naked allegation, unsupported by any supporting evidence and conspicuously identical to two other lawsuits she filed and settled against other former employers accused of the same claims, that her contract is substantially the same as [Defendant]'s roughly 500 other nationwide loan officers." (Opp'n at 6). Defendant is correct that Plaintiff has only provided her own employment contract with Defendant and not the contracts of Defendant's other approximately 350 full-time Loan Officers. (*See generally* Mot.) Such a showing, however, is not required under the FLSA at this stage. "At this early stage of the litigation . . . [t]he level of consideration is 'lenient,' sometimes articulated as requiring 'substantial allegations,' sometimes as turning on a 'reasonable basis,' but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings." *Campbell*, 903 F.3d at 1109 (internal citations omitted).

Further, Defendant argues that the circumstances of Plaintiff's re-hiring were unique. (Opp'n at 2–3, 6.) While this may be true, both Parties agree that the terms of Plaintiff's employment were standard, thus the unique aspects of Plaintiff's employment do not prevent her from being similarly situated to the proposed Collective Members at this stage. (ECF No. 33.)

If, after engaging in discovery, it becomes apparent that Plaintiff and the proposed Collective Members are not in fact similarly situated, Defendant can "move for 'decertification' of the collection action for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point." *Campbell*, 903 F.3d at 1109. Should Defendant choose to file a decertification motion, the Court "will then take a more exacting look at [Plaintiff's] allegations and the record." *Id.* At this stage, however, Plaintiff has carried her burden of plausibly alleging that she and the proposed Collective

1  Members are similarly situated in that they "share a similar issue of law or fact material to
2  the disposition of their FLSA claims." *Id.* at 1117.

## II. Notice

Plaintiff asks the Court to authorize sending notice of this lawsuit, by way of last known mailing address and email address, to a proposed Collective of all current and former Loan Officers that were employed by Defendant in the United States and were paid on a commission-only basis at any point in the last three years. (*See* Mot. at 4.) Plaintiff provided a proposed Notice of Rights with the Motion for Conditional Certification. (Whitehead Decl. at 5–9.) Defendant did not object to the proposed Notice of Rights in its Opposition to the Motion for Conditional Certification. (*See generally* Opp'n).

### A. *Notice Language*

At the hearing, Defendant requested an amendment to the proposed Notice of Rights to add language referencing the potential burdens of joining the lawsuit. (ECF No. 33.) This amendment is proper to ensure opt-in plaintiffs understand the potential obligations of opting in to the lawsuit. *See Zeman v. Twitter, Inc.*, 747 F. Supp. 3d 1275, 1288 (N.D. Cal. 2024) (ordering plaintiffs to include in their notice "While this lawsuit is pending, you may be required to respond to written questions, appear for depositions under oath, produce documents, and/or testify"). Plaintiff shall update the proposed Notice of Rights to include a statement to this effect.

At the hearing, Plaintiff agreed to amend the language in the proposed Notice of Rights to include the fact that opt-in plaintiffs may opt-in but select their own counsel. (ECF No. 33.) This is proper to ensure that opt-in plaintiffs have a fair statement of their rights. *See Robinson v. Maricopa Cnty. Special Health Care Dist.,* 696 F. Supp. 3d 769, 788 (D. Ariz. 2023) (requiring language added to the proposed notice to indicate that "[p]utative class members may choose to opt-in and hire their own lawyer"). Plaintiff shall update the proposed Notice of Rights to include a statement to this effect and **SHALL FILE** with the Court a copy of the updated proposed Notice of Rights for approval.

/ / /

**B.   *Reminder Notice***

Plaintiff further requests that she be permitted to send a reminder notice in the form of a postcard mailer halfway through the opt-in period.  (*See* Mot. at 4; ECF No. 33.)  Plaintiff did not include a proposed reminder notice with her Motion for Conditional Certification.  Defendant did not object to the proposed reminder notice.  (*See generally* Opp'n; ECF No. 33.)  Plaintiff **SHALL FILE** with the Court a copy of the proposed reminder notice for approval.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion and **CONDITIONALLY CERTIFIES** the proposed class of all current and former Loan Officers employed by Defendant in the United States who were paid on a commission-only basis at any point in the past three years.  Plaintiff **SHALL FILE** an amended proposed notice in compliance with this order and a proposed reminder notice <u>within 30 days of the date of this Order</u>.

**IT IS SO ORDERED.**

Dated:  October 15, 2025

_____
Honorable Todd W. Robinson
United States District Judge